# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| HERMAN S. SIMMS, SR. | * |
| v. | * Civil Case No. ELH-13-1178 |
| COMMISSIONER, SOCIAL SECURITY | * |

**\*\*\*\*\*\*\*\*\*\*\*\***

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me for review of the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). The Plaintiff, Herman S. Simms, Sr., has not filed a motion for summary judgment. I have considered the Commissioner's pending motion for summary judgment, which Mr. Simms did not oppose.[1] [ECF No. 15]. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted.

Mr. Simms applied for Disability Insurance Benefits and Supplemental Security Income on July 26, 2010, alleging a disability onset date of February 28, 2007. (Tr. 175-80). His claims were denied initially on October 6, 2010, and on reconsideration on March 9, 2011. (Tr. 113-22, 124-29). An Administrative Law Judge ("ALJ") held a hearing on January 11, 2012, at which

---

[1] On October 30, 2013, the Court sent Mr. Simms a Rule 12/56 letter advising him of the potential consequences if he did not file an opposition to the Commissioner's motion. [ECF No. 16].

Mr. Simms was represented by counsel.[2] (Tr. 19-70). Subsequently, the ALJ denied benefits to Mr. Simms in a written opinion dated February 23, 2012. (Tr. 6-18). The Appeals Council denied review, (Tr. 1-3), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that, during the relevant time frame, Mr. Simms suffered from the severe impairments of depression, degenerative disc disease, degenerative joint disease of the left knee, osteoarthritis of the left ankle, asthma, and substance abuse. (Tr. 11). Despite these impairments, the ALJ determined that Mr. Simms retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is further limited to: occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; requires a sit/stand option that allows him to sit or stand alternatively, at will; requires a well ventilated area; must avoid concentrated exposure to hazards; and, because of his mental impairments, he can perform jobs consisting of unskilled, routine, and repetitive tasks, with only occasional interaction with the public and co-workers.

(Tr. 14). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Mr. Simms could perform, and that he was not therefore disabled. (Tr. 17-18).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a pro se action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

---

[2] In fact, Mr. Simms's attorneys sent a detailed pre-hearing memorandum to the ALJ, which is part of the record. (Tr. 413-18).

The ALJ proceeded in accordance with applicable law at all five steps of the sequential evaluation. At step one, the ALJ found in Mr. Simms's favor that he had not engaged in substantial gainful activity since his alleged disability onset date. (Tr. 11). At step two, the ALJ found severe impairments of depression, degenerative disc disease, degenerative joint disease of the left knee, osteoarthritis of the left ankle, asthma, and substance abuse. *Id.* The ALJ also assessed Mr. Simms's pancreatitis, coronary artery disease, cervical degenerative disc disease, tendonitis in the left foot, and reduced vision. *Id.* The ALJ cited appropriate medical sources in determining that those additional impairments were not severe. (Tr. 11-12).

At step three, the ALJ assessed a series of potentially applicable Listings and identified the precise criteria leading to his determination that each Listing had not been met. Specifically, the ALJ considered Listing 1.04 (Disorders of the Spine), Listing 1.02 (Major Dysfunction of a Joint), Listing 3.03 (Asthma), and Listings 12.04 and 12.09 (Mental Impairments). (Tr. 12-14). Mr. Simms's impairments did not require analysis of any additional Listings.

At step four, the ALJ provided a summary of Mr. Simms's testimony and the information he provided in a Pain Questionnaire. (Tr. 15, 228-29). The ALJ also analyzed the medical evidence from two mental health screening and assessments, and noted Mr. Simms's non-compliance with mental health treatment. (Tr. 15, 640-44). The ALJ also summarized the objective testing and examination results relating to Mr. Simms's physical impairments. (Tr. 16, 291, 374, 495, 571, 658). The ALJ explained his assignments of weight to the opinions of the treating medical sources, including Dr. McClure, (Tr. 13), and Dr. Amble,[3] (Tr. 16), and the state agency medical consultants, (Tr. 17). With respect to the treating physicians' opinions, the ALJ provided substantial evidence to support his decision to afford their opinions little weight. The

---

[3] Although the ALJ referred to Dr. Ambers, the report that the ALJ cited says, "Dr. Amber" at the top, and the signature is illegible. (Tr. 402-05). The medical records reflect that the physician's name is Dr. Jayashree Amble. *See, e.g.,* (Tr. 613).

ALJ noted that Dr. McClure had completed two contradictory opinion forms on the same day, and that Mr. Simms had testified, contrary to those two opinions, that his mental health medication was effective and that he had no social issues or issues with concentration. (Tr. 13, 44-45, 406-12). The ALJ also assigned little weight to the opinion from Dr. Amble suggesting extremely limited physical capacities. (Tr. 16). As the ALJ noted, objective testing showed only mild degenerative disease, and Mr. Simms's unsuccessful efforts to participate in karate classes demonstrated that his physical impairments were not as debilitating as Dr. Amble suggested. (Tr. 16, 50-51, 374, 495, 571). Finally, the ALJ assigned great weight to the opinions of the state agency medical consultants, whose proposed RFCs generally comported with the RFC determined by the ALJ. (Tr. 74-79, 95-100). While it might be equally possible to select excerpts from the medical evidence that could support a determination of disability, the function of this Court is not to review Mr. Simms's claims *de novo* or to reweigh the evidence of record. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (citing 42 U.S.C. § 405(g) and *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). Rather, this Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Coffman*, 829 F.2d at 517; *see* 42 U.S.C. § 405(g). Under that standard, and in light of the objective medical tests, the attempted participation in strenuous physical activities and the opinions from the state agency medical consultants, I recommend that the ALJ's RFC determination be affirmed.

The ALJ also appropriately completed step five of the sequential evaluation. The ALJ took testimony from the VE regarding the requirements of Mr. Simms's past relevant work. (Tr. 63-64). The ALJ posed a series of hypotheticals to the VE to determine whether a person with

each set of hypothetical criteria would be able to find work. (Tr. 65-69). Ultimately, the ALJ determined that Mr. Simms's RFC matched one of the hypotheticals he had posed. (Tr. 14, 66-67). The VE had cited two jobs (mail clerk and office helper) in response to that hypothetical, and the ALJ relied on that VE testimony in his opinion. (Tr. 18). The ALJ's step five determination, therefore, was supported by substantial evidence.

CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court GRANT Defendant's Motion for Summary Judgment, [ECF No. 15]; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b)(2) and Local Rule 301.5.b.


Dated: December 27, 2013                         /s/
                                          Stephanie A. Gallagher
                                          United States Magistrate Judge